IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JACKI R. McWHORTER                                    PLAINTIFF

         v.                 Civil No. 10-5101

MAYNARD, INC.                                          DEFENDANT

### O R D E R

Now on this 18th day of July 2011, comes on for consideration defendant's **Motion for Summary Judgment**, brief in support and statement of undisputed facts (Docs. 15, 16 and 17) and plaintiff's response, brief in opposition thereto and her responses to defendant's statement of undisputed facts (Docs. 18, 19 and 20), and defendant's reply (Doc. 21).  The Court, being well and sufficiently advised, finds and orders as follows:

### Background

Plaintiff, Jacki McWhorter, was employed by Maynard, Inc. ("Maynard"), for approximately ten and one-half years.  On November 3, 2008, plaintiff suffered a brain aneurysm and a stroke.

On January 19, 2009, after spending time in a hospital and then a rehabilitation facility, plaintiff returned to work at Maynard.

Approximately two months later, on March 20, 2009, Maynard terminated plaintiff's employment.  Plaintiff was fifty years old at that time.

Plaintiff commenced this action against Maynard on June 7, 2010, alleging violations of the Americans with Disabilities Act ("ADA") and the Age Discrimination in Employment Act ("ADEA").

In its Answer, Maynard denies that it violated either the ADA or the ADEA.

On June 20, 2011, Maynard moved for summary judgment on all of plaintiff's claims.  Plaintiff has responded to the motion and it is ripe for consideration by the Court.  A jury trial is set for August 1, 2011.

## **Material Facts**

The Court finds the following material and undisputed facts:

*    Plaintiff was hired by Maynard on August 3, 1998.  She primarily worked in bookkeeping.

*    Joe Maynard is the president of Maynard.

*    On May 30, 2008, Joe Maynard held a meeting to discuss the future expectations of employees regarding retirement options at Maynard.  Eleven people, including plaintiff, were invited to attend the meeting.  All eleven people were over 49 years old.

*    At the May 2008 meeting, Mr. Maynard said something to the effect that "when people get older, they tend to slow down . . . but in order to stay employed at Maynard, you will need to give 100 percent."  (Plaintiff's depo. at 52-53). Plaintiff does not believe that he was directing his comment to any specific person.

-2-

* Mr. Maynard also told the attendees that he wanted to have a follow-up meeting so that people could bring ideas about what they expected from the company in terms of retirement packages.

* During the second follow-up meeting, Maynard employees shared their ideas about possible retirement options.

* On November 3, 2008, plaintiff suffered a brain aneurysm and a stroke.  As a result of her medical condition, plaintiff could not return to work until January 19, 2009.

Although not required by company policies, Maynard paid plaintiff her full salary and benefits during the time she was absent from work due to her medical condition.

* On or before January 19, 2009, plaintiff's primary physician, Dr. Furlow, released her to return to work.  Dr. Furlow did not place any restrictions on plaintiff's ability to return to work.  Rather, he told her that he "would just leave it up to [her] [as to] how much [she] could work."  (Plaintiff's depo. at 25).

* Plaintiff's occupational therapist told her that she should not work more than 20 hours a week.

* When plaintiff returned to work, she could not use her left hand at all, but she made adjustments using her right hand -- although she was not able to do such things as typing at her prior speed.

-3-

In addition, plaintiff was limited in her driving abilities, she had trouble dressing herself when items of clothing had buttons or snaps, and she had some trouble with balancing when walking on uneven surfaces, such as gravel.

*   When plaintiff returned to work, she advised her supervisor, Maria Smith, that she "was not strong enough to work full-time."

*   Ms. Smith responded in an e-mail to plaintiff in which she stated:

> I'd like to keep you on full time rather than have you deal with part-time and cobra and 3 month wait for conversion back to full-time benefits.
>
> In order to do this, you will need to use your PTO[1] hours to make up the difference b/n 32 hours[2] and hours worked.  As you build stamina and strength, it should be less and less...but, you will probably have to go a few months without any PTO until your anniversary in August.
>
> I believe that this approach is very considerate as well as sustainable.
>
> Please let me know if you have any questions,
> Maria.

*   Beginning in January 2009, Maynard began laying people off of work due to an operational short fall and decreased production orders.

---

[1]   PTO refers to "paid time off."

[2]   In order to qualify for full benefits at Maynard, plaintiff needed to work at least 32 hours per week.

-4-

\* On March 20, 2009, Maynard terminated plaintiff's employment. At that time, Ms. Smith completed a "Termination of Employment" form on which there are several pre-preprinted reasons for termination, *e.g.,* resignation, job abandonment, lay-off, unsatisfactory work, etc. Maynard indicated that the reason for plaintiff's termination was "Lay-Off" -- and both Ms. Smith and Mr. Maynard signed the form. (Plaintiff declined to sign the form).

\* There is also space on the form for "additional remarks, and in that section Ms. Smith wrote "lack of business coupled with recent discovery of poor choices made in PRC manager capacity."

\* No one was hired to fill plaintiff's position. Rather, plaintiff's duties were redistributed to her former supervisor, Ms. Smith.

### Legal Analysis

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See Fitzgerald v. Action, Inc.*, 521 F.3d 867, 871 (8th Cir. 2008).

1. **ADEA Claim** -- The ADEA prohibits discrimination against employees, age 40 and over, because of their age. *See* 29 U.S.C. §§ 623(a)(1), 631(a). Under the ADEA, a plaintiff may prove age discrimination based on disparate treatment. Here, plaintiff relies on circumstantial rather than direct evidence of age

discrimination, and, thus, her case is considered under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). *See Tusing v. Des Moines Indep. Cmty. Sch. Dist.*, 639 F.3d 507, 515 (8th Cir. 2011).

Under the *McDonnell Douglas* framework, plaintiff must first establish a four-part prima facie case of age discrimination. *See Chambers v. Metro. Prop. & Cas. Ins. Co.*, 351 F.3d 848, 855 (8th Cir. 2003). To establish a prima facie case of age discrimination in cases involving a reduction-in-force ("RIF"), plaintiff must show that: (1) she is over 40 years old, (2) she met Maynard's job qualifications; (3) she was terminated; and (4) there is some additional evidence that age was a factor in Maynard's decision to terminate her employment. *See Ward v. Int'l Paper Co.*, 509 F.3d 457, 460 (8th Cir. 2007).

"Additional evidence is a necessary part of the prima facie case in the RIF context," and it can be statistical or circumstantial. *Ward*, 509 F.3d at 461. "[T]he prima facie case requires evidence adequate to create an inference that an employment decision was based on an illegal discriminatory criterion." *Id.* (internal brackets, quotation marks and citations omitted). "The ADEA does not require that every plaintiff in a protected age group be allowed a trial simply because [she] was discharged during a reduction-in-force." *Id.* (internal quotation marks and citation omitted).

If plaintiff establishes a prima facie case, the burden of production shifts to Maynard to articulate a legitimate, nondiscriminatory reason for its adverse employment action. *See Ward*, 509 F.3d at 460.

If Maynard puts forward a legitimate, nondiscriminatory reason for its decision to terminate her employment, then plaintiff must show that Maynard's proffered reason was pretext for discrimination. *See Ward*, 509 F.3d at 460.

At all times, plaintiff retains the burden of persuasion to prove that age was the "but-for" cause of the termination. *See Tusing*, 639 F.3d at 516. "Thus, proof that the explanation is false is necessary, but not sufficient, to show a pretext for discrimination under the ADEA. In other words, the plaintiff must show that the employer's stated reason was false and that age discrimination was the real reason." *Id.*

With the foregoing concepts in mind, the Court now turns to an analysis of the parties' contentions relative to the ADEA claim.

(a)  There is no dispute that plaintiff has met the first three elements of a prima facie case. The question is whether she has met the fourth element by coming forward with additional evidence that age was a factor in Maynard's decision to terminate her employment. To support her position that she has met her burden of proving a prima facie case, plaintiff points to the following evidence:

-7-

\*    the May 2008 meeting and Joe Maynard's comments made at
that meeting;

\*    the statistical evidence; and

\*    the inconsistent explanations for her termination.

(b)   ***The May 2008 meeting and Joe Maynard's comments --***

Plaintiff alleges that an inference of age discrimination can be
found in Joe Maynard's comments at the May 2008 meeting where he
said something to the effect of "when people get older, they tend
to slow down . . . but in order to stay employed at Maynard, you
will need to give 100 percent."  Plaintiff argues that, although
Joe Maynard says that the meeting was to discuss retirement
options, no retirement options were discussed at the meeting.  She
points out that the meeting was specifically for people over the
age of 49 and it was held outside, behind one of Maynard's
buildings.

Plaintiff contends that both the topic and the location of the
meeting are "suspect."  The e-mail to the attendees of the May 30,
2008, meeting told them to meet outside "weather permitting,
otherwise B1 breakroom."

The Court is not persuaded by plaintiff's argument that the
proposed outside location for the meeting -- weather permitting --
can properly be characterized as "suspect" in the context of this
discussion.  If the argument is being made that defendant set the
meeting for a location outside in the open air because of the

-8-

advanced age of those invited, the argument, itself, would appear to be "suspect."   If the location selection was meant to turn on the consideration of age, one would think that a meeting location indoors in a predictable, controlled environment would have been selected as opposed to an outside location susceptible to possible inclement weather or weather extremes.   The Court declines to consider the location selected for the meeting as any basis to infer age discrimination.

The Court also does not see any basis to conclude that the occurrence of the meeting, itself, is evidence from which age discrimination can properly be inferred.

During the meeting, Mr. Maynard told the attendees he wanted to have a follow-up meeting so that people could bring forth ideas about what they expected from the company in terms of retirement. In the Court's view, it is reasonable to infer therefrom that, in essence, Mr. Maynard was soliciting ideas for retirement packages from the people he thought would be most interested in participating in those programs.

Plaintiff has cited to no case which holds that there is something inherently unlawful or discriminatory about an employer holding a meeting to discuss possible retirement packages with those employees who, based on their age and/or tenure with the company, might be interested in such a discussion.

Further, the Court believes that Joe Maynard's statement made at the meeting (about older people tending to slow down, etc.) is properly characterized as a "stray remark," which does not -- by itself -- give rise to an inference of discrimination.  See *Fitzgerald*, 521 F.3d at 876-77.  As the Eighth Circuit has noted, however, such remarks are not irrelevant.

> [S]uch comments are surely the kind of fact which could cause a reasonable trier of fact to raise an eyebrow, thus providing additional threads of evidence that are relevant to the jury.  When combined with other evidence, stray remarks constitute circumstantial evidence that . . . may give rise to a reasonable inference of age discrimination.

*Id.* (internal quotation marks and citations omitted);

"Stray remarks therefore constitute circumstantial evidence that, when considered together with other evidence, may give rise to a reasonable inference of age discrimination."  *Fisher v. Pharmacia & Upjohn*, 225 F.3d 915, 923 (8th Cir. 2000) (internal citations omitted).

The Court notes that plaintiff admits the comments made by Joe Maynard were not directed specifically at her.  Further, the meeting at which he made these comments occurred almost one year before plaintiff was terminated -- and eight months prior to the first company lay-off.  Based on these two facts, the Court finds that the remarks -- while they might be seen as evidence of some discriminatory animus -- are somewhat "outdated" and also lack significant probative value.  *See Walton v. McDonnell Douglas*

*Corp.*, 167 F.3d 423 428 (8th Cir. 1999) (holding that stray remarks made almost two years prior to employment action was "outdated" and "lacking in apparent probative value.").

Thus, the Court finds that these remarks by Joe Maynard, by themself, do not amount to sufficient "additional evidence" that age was a factor in Maynard's decision to terminate plaintiff's employment and the stray remarks do not alone satisfy the fourth element of plaintiff's prima facie case. The Court will, however, consider such remarks in the context of the statistical evidence.

(c)   ***Statistical evidence*** -- The Court notes that, in analyzing the statistical evidence, it has focused on the time period between May 1, 2008 (the month of the meeting when Mr. Maynard made the stray remarks about age) and June 30, 2009 (the month in which the last lay off occurred pursuant to Maynard's responses to plaintiff's discovery requests, Ex. A, Doc. 20-5).

| Time period | Total number of employees terminated at Maynard | Number of employees terminated **over 40 years old** | Percentage of terminated employees **over 40 years old** |
|---|---|---|---|
| 5/1/08 - 6/30/09 | 82 | 33 | 40% |

| Time period | Total number of employees laid off at Maynard | Number of employees laid off **over 40 years old** | Percentage of laid off employees **over 40 years old** |
|---|---|---|---|
| 5/1/08 - 6/30/09 | 28 | 14 | 50% |

| Time period | Total number of employees terminated at Maynard | Number of employees terminated **over 50 years old** | Percentage of terminated employees **over 50 years old** |
|---|---|---|---|
| 5/1/08 - 6/30/09 | 82 | 12 | 14.6% |

| Time period | Total number of employees laid off at Maynard | Number of employees laid off **over 50 years old** | Percentage of laid off employees **over 50 years old** |
|---|---|---|---|
| 5/1/08 - 6/30/09 | 28 | 7 | 25% |

As set forth in the tables above:

* of the total terminations, 40% were over 40 years old, and 14.6% were over 50 years old;

* of the total layoffs, 52% were over 40 years old, and 25% were over 50 years old.

At first blush, these statistics may seem to raise an inference of discrimination. However, the Eighth Circuit has held that this type of statistical evidence is "meaningless" without some analysis of the age of the entire workforce at Maynard before and after the RIF. *See Chambers*, 351 F.3d at 856; *EEOC v. McDonnell Douglas Corp.*, 191 F.3d 948, 952 (8th Cir. 1999) ("an important statistic to consider in the RIF context is the difference in the percentage of older employees in the work force before and after the RIF.")

-12-

The statistical evidence of the percentage of employees aged 50 or older before and after the RIF is as follows:[3]

|  | Total Number of employees at Maynard | Number of employees over 50 years old | Percentage of employees over 50 years old |
|---|---|---|---|
| October 2008 | 143 | 22 | 15.3% |
| May 26, 2009 | 97 | 17 | 17.5% |

The above statistics show:

*  that prior to the RIF, 15.3% of the workforce at Maynard was over 50 years old; and

*  that after the RIF, 17.5% of the workforce was over 50 years old.

The foregoing shows that the percentage of employees aged 50 years or older at Maynard actually increased after the RIF.

In light of the foregoing analysis, the Court concludes, that the stray remarks made by Joe Maynard -- coupled with the statistical evidence -- are insufficient to establish a prime facie case of age discrimination. *See Holley v. Sanyo Mfg., Inc.*, 771 F.2d 161, 1167 (8th Cir. 1985) (holding no statistical evidence of age discrimination where "[t]he percentage of such employees in the

_____

[3] The Court notes that it compiled this statistical data by using the information provided by Maynard in its response to the EEOC request for information (*see* Doc. 20-3), Maynard's discovery responses (*see* Doc. 20-5) and Joe Maynard's Affidavit (*see* Doc. 15-1).

protected class before the layoff was 25.8%; after the layoff it was 26.0%.").

(d)   ***The inconsistent explanations for termination*** -- Plaintiff asserts that Maynard provided inconsistent explanations for its decision when it checked the box on her "Termination of Employment Form" that the reason for her termination was "Lay-Off" and stated in the additional remarks section that the termination was due to "lack of work coupled with recent discovery of poor choices made in PRC manager capacity."

Plaintiff also points to the fact that, in completing the "Notice to Last Employer" form submitted to the Arkansas Department of Workforce Services regarding plaintiff's unemployment benefits, Maynard stated the reason for her termination was "lack of work."

Plaintiff cites to the case of *Young v. Warner-Jenkinson Co.*, 152 F.3d 1018 (8th Cir. 1998) in which the Eighth Circuit held that the company's inconsistent explanations for the plaintiff's termination were enough to support an inference of discriminatory treatment such that plaintiff had stated a prima facie case, and, moreover, had created a genuine issue of fact as to the issue of pretext to avoid summary judgment.

The Court believes that the facts of *Young* are distinguishable from those in this case and that it is not controlling on the issue under discussion here.  In *Young*, the plaintiff presented evidence that -- at a meeting -- he was informed by his manager of the

-14-

company's decision to terminate his employment for poor performance
and that, during this meeting, the manager referred to a memorandum
which outlined three areas wherein the plaintiff had performance
problems.   Later, after plaintiff filed complaints with the EEOC,
the company stated that his termination was due to "lack of
available work."  After reviewing this evidence, the Eighth Circuit
stated:

> Warner-Jenkinson's insistence on characterizing Young's
> dismissal as a layoff prompted by a lack of available work
> flies in the face of substantial evidence that Young was
> earlier told a completely different story. Although
> Warner-Jenkinson may be able to offer a plausible
> explanation  for this apparent change in positions, as
> well as for the apparent mendacity of the alleged
> deficiencies in Young's job performance, these are matters
> to be decided at trial and not by summary judgment.

*Young,* 152 F.3d at 1024.

In the case at bar, Maynard has consistently stated that the
reason for plaintiff's termination was a lay-off due to lack of
work and plaintiff admits that she was told at the meeting on
January 19, 2009, that she was being laid-off.  The fact that
Maynard also provided an additional basis for her termination
(*i.e.,* poor management choices) does not, in the Court's view,
undermine Maynard's primary stated reason for her termination.

Although plaintiff alleges in her brief that there was no
reason to lay her off because there was no lack of work in her
department, she admitted that she was aware that, after she
returned to work in January 2009, there were layoffs happening

-15-

throughout the company because of "lack of work in a lot of the departments."  She also admits that she "really did not know that much about the layoffs and the reasons behind them or even the purposes of them." (Plaintiff's depo. at 63).  Plaintiff does not point to any evidence to support her allegation and it appears that her own testimony fails to support it.

The Court also notes that it is undisputed that Maynard did not fill plaintiff's position, but merely redistributed her duties to Ms. Smith.  This fact is also undermines plaintiff's allegation that there was no lack of work in her department and supports Maynard's position that plaintiff was laid-off for lack of work.

Thus, even if the Court could properly conclude that plaintiff had established a prima facie case of age discrimination, Maynard has articulated a legitimate, nondiscriminatory reason for its adverse employment action, *i.e.,* a reduction in force. *See Hesse v. Avis Rent-A-Car Sys.*, 394 F.3d 624 (8th Cir. 2005).

To survive summary judgment, plaintiff must show that Maynard's proffered reason was pretext for discrimination by showing that (1) Maynard's stated reason for terminating her was false and (2) that age discrimination was the real reason.

For the reasons set forth above, the Court finds that plaintiff has failed to meet her burden at both the prima facie stage and the pretext stage.  Specifically, the Court finds that plaintiff has not presented evidence that shows that Maynard's

reason for her termination was false, or that age discrimination was the real reason.  Thus, Maynard is entitled to summary judgment on plaintiff's ADEA claim.

2.  **The ADA** – To establish a prima facie case of disability discrimination, the Court employs the same burden-shifting framework as under the ADEA.  Namely, plaintiff must show that she has a disability within the meaning of the ADA, that she was qualified to perform the essential functions of the job, with or without reasonable accommodation, and she suffered an adverse employment action because of her disability. *Norman v. Union Pac. R.R.* Co., 606 F.3d 455, 459 (8th Cir. 2010).

If she makes out a prima facie case, then Maynard must articulate a legitimate, nondiscriminatory reason for its decision to terminate her employment. *See Lors v. Dean*, 595 F.3d 831, 834 (8th Cir. 2010).  If Maynard meets its burden, then plaintiff must present sufficient evidence that Maynard's articulated reason for the adverse employment action was false and that "discrimination was the real reason." *Id.*  To demonstrate pretext, plaintiff "must do more than simply create a factual dispute as to the issue of pretext; [she] must offer sufficient evidence for a reasonable trier of fact to infer discrimination." *Id.* (internal quotation marks and citations omitted).

The Court finds it unnecessary to address the issues regarding whether plaintiff has established a prima facie case of

-17-

discrimination because, even if she had, the Court has concluded that Maynard has articulated a legitimate, nondiscriminatory reason for her termination.  The ultimate question then is whether plaintiff has established pretext such that a reasonable trier of fact could infer disability discrimination.

Plaintiff alleges that she has established pretext by showing the inconsistent explanations Maynard gave for her termination. The Court has already considered and rejected this allegation.

In addition, plaintiff points to the fact that, during her hospitalization, Maynard provided her with a laptop computer. Plaintiff says that, if her position was going to be terminated due to "lack of work," then Maynard would not have provided her with a laptop computer while she was in the hospital.

Plaintiff also asserts that Maynard did not decide to terminate her employment until after she returned to work and Maynard discovered the true extent of her injuries, *i.e.,* that she had to work part-time at a slower pace.  Thus, says plaintiff, Maynard's explanation for her termination -- lack of work -- is demonstrably false.

With respect to the laptop computer, plaintiff testified at her deposition that Maynard gave her the laptop computer for her personal rehabilitation use -- and that she was not expected to work from her hospital bed.

The Court does not believe the fact that Maynard brought her a computer for her own personal use while she was at the rehabilitation facility is any evidence -- one way or the other -- that her department was suffering from lack of work since she acknowledged that it was admittedly provided for rehabilitation purposes and not so she could work from her hospital bed. Absent some proof that Maynard's explanation was false, the Court sees no reason to discount or reject it -- especially when plaintiff does not actually dispute it. It must be remembered that the Court does not sit as a super-personnel department reviewing the wisdom or fairness of the business judgments made by employers. *See Anderson v. Durham D&M,* L.L.C., 606 F.3d 513, 522 (8th Cir. 2010).

With respect to the other reasons that plaintiff has offered as amounting to pretext, those issues have been addressed above and rejected. Thus, the Court finds that plaintiff has failed to offer sufficient evidence for a reasonable trier of fact to infer disability discrimination. Thus, Maynard is entitled to summary judgment on plaintiff's ADA claim.

**IT IS THEREFORE ORDERED** that defendant's **Motion for Summary Judgment** (Doc. 15) is hereby **GRANTED** and plaintiff's complaint is hereby **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED.**

/s/JIMM LARRY HENDREN
JIMM LARRY HENDREN
UNITED STATES DISTRICT JUDGE

-19-